[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2011
JOHN LEY
CLERK

No. 10-12927
_____

D.C. Docket No. 2:07-cv-00349-JEO

ELLIS M. HAMMONDS,
individually and by and through his
Next Legal Friend, Norman E. Hammonds,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,
through its agents, servants and employees
or agents, servants, and employees of its
agency,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 22, 2011)

Before CARNES and PRYOR, Circuit Judges, and SEITZ,[*] District Judge.

PER CURIAM:

We must determine in this case whether there is liability on a medical negligence claim when the risk giving rise to a duty of care did not cause the harm but the harm might have been serendipitously avoided if the standard of care had not been breached. To resolve this issue we apply Alabama law, which for both the duty and proximate cause elements of a negligence claim requires the risk of harm to be foreseeable. Foreseeability is inconsistent with serendipity.

## I.

In December 2003 Ellis Hammonds, who is a veteran, had bilateral hip replacements. On October 4, 2005, Hammonds went to the Veterans Administration Medical Center in Birmingham, Alabama to see a dentist. Dr. Dennis Rafferty did an oral examination and prescribed antibiotics to Hammonds before cleaning his teeth. Antibiotics were necessary because of the risk that Hammonds might develop an infection in his artificial hip joints as a result of the teeth cleaning.

---

[*]Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida, sitting by designation.

On November 3, 2005, Hammonds was scheduled to have what he describes as "a sedative-induced dental procedure." Before the scheduled date for the procedure, Dr. Cashion, a staff dentist at the VA Medical Center, prescribed antibiotics for Hammonds. A little over a week before Hammonds' November 3 appointment, Dr. Rex Adams instructed him to take four antibiotic capsules one hour before the dental procedure.

Dr. Adams, who was Hammonds' treating dentist for the November 3 procedure, later testified in his deposition that for a patient who had undergone a hip replacement the standard of care required prophylactic antibiotic therapy, specifically two grams of amoxicillin one hour before the dental appointment. If the patient said he had not taken the antibiotic, the drug would be administered, and the dental procedure would be delayed for an hour. Hammonds testified in his deposition that after his mouth had been "numbed" and the procedure was underway, he remembered the antibiotic prescription and told Dr. Adams that he had not taken it. He was given the antibiotic, but the procedure was in progress and there was no one hour delay.[**]

---

[**]In Hammonds' medical records Dr. Adams noted that he asked Hammonds whether he had taken the medication, and Hammonds responded that he had. In our review of the decision to grant summary judgment to the defendant, however, "all facts are viewed, and all factual disputes are resolved, in the light most favorable to the plaintiff." Johnson v. Univ. Health Servs., Inc., 161 F.3d 1334, 1337 n.5 (11th Cir. 1998).

3

A few weeks after the November 3 dental procedure Hammonds, who had no history of heart problems, was diagnosed with infective endocarditis, which is an inflammation of the inner layer of the heart. Hammonds did not develop any complications related to his hip replacements.

II.

Hammonds filed a lawsuit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., alleging dental negligence. After the discovery period had closed, the United States filed a motion for summary judgment. In ruling on that motion the district court correctly observed as an initial matter that Alabama substantive law applies to Hammonds' FTCA claim. See Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001) (explaining that "the [FTCA's] reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."). If there is no state law liability, there is no FTCA liability. Id.

The district court noted that Hammonds had presented evidence of the applicable standard of care through Dr. Adams' testimony. The court explained:

> [Dr. Adams] stated in his deposition that the standard of care in
> November 2005 with respect to prophylactic antibiotic therapy for
> patients who had undergone hip replacement surgery like the plaintiff
> was two grams of amoxicillin one hour prior to the dental
> appointment. Additionally, Dr. Adams stated that if a patient had not

4

taken the antibiotic one hour prior to the procedure, the antibiotic
should be administered and the procedure delayed for one hour.

The court determined that Dr. Adams' "failure to follow the testified-to protocol when dealing with certain hip replacement patients exposed the plaintiff to a risk of harm from infection in his hip joints." Even so, the court rejected Hammonds' efforts to "transfer that risk of harm to the risk of developing a 'bacterial-related [infection] triggered by the dental procedure.'" It concluded that "it would be inappropriate under the circumstances to impose such a general duty." The court held that "there was no legal duty to give the plaintiff an antibiotic regime[n] preceding the . . . dental procedure beyond the risk associated with the hip replacement."

Hammonds later filed a Rule 59 motion to alter or amend the judgment, which the district court denied. The court reiterated that there was a question of fact about whether Dr. Adams had breached the standard of care when he failed to give Hammonds two grams of amoxicillin one hour before his dental procedure in order to prevent infection in his artificial hip joints. The court concluded, however, that "this was not a question of material fact, because even if Dr. Adams failed to follow the standard, the injury Plaintiff suffered, bacterial endocarditis, was not foreseeable at the time of the procedure." The reasoning was that

5

Hammonds had no history of heart disease, so the injury that occurred was unforeseeable, and under Alabama law Dr. Adams had no duty to prevent an unforeseeable injury. The court went on to state that "Dr. Adams' duty was to prevent only the injury that was foreseeable to him at the time of the dental procedure, i.e., infection to Plaintiff's hip replacement joint." Furthermore, "were it not for Plaintiff's risk of developing infection to his hip replacement joint, Dr. Adams would not have administered the antibiotic in the first place."

### III.

"We review <u>de novo</u> the district court's grant of a motion for summary judgment, considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." <u>Ellis v. England</u>, 432 F.3d 1321, 1325 (11th Cir. 2005). Hammonds contends that the foreseeable risk of harm from the failure to properly administer the amoxicillin was the development of an infection, regardless of its location in the body. He asserts that Dr. Adams' duty was to prevent all foreseeable infections, not just a single one, and that an unintended benefit of properly administered antibiotics would have been the prevention of infective endocarditis.

The United States contends that because Hammonds had no history of heart trouble his development of infective endocarditis was unforeseeable, and the VA

6

Medical Center owed him no duty to take prophylactic measures against the risk of that injury. Hammonds has offered no evidence suggesting that a risk of infection in his hip joints indicates any risk of developing infective endocarditis. The United States asserts that Dr. Adams had no reason to think that the dental procedure would subject Hammonds to a wide variety of bodily infections. Hip joint infection was the only infection that posed a risk, and that particular risk was the only reason a prophylactic antibiotic was prescribed.

Under Alabama law "the question of whether a legal duty exists is essentially a question of law for the court, to be resolved by determining whether the injury was foreseeable." Keebler v. Winfield Carraway Hosp., 531 So. 2d 841, 844 (Ala. 1988) (citation omitted). Applying that rule, the Alabama Supreme Court has held that a physician's duty to guard against his patient's committing suicide depends upon the foreseeability of the suicide. See id. at 845. Charles Keebler had been treated at a hospital for a possible overdose of valium and alcohol and then was released from the hospital's care. Id. at 845. Keebler was taken to jail where he hanged himself. Id. at 843–44. His wife filed a lawsuit against the hospital as well as the doctor and nurse who treated Keebler,[***] alleging

---

[***]The plaintiff also brought claims against the City of Winfield and some city employees, but those claims were settled before trial. Id. at 842.

7

wrongful death based on medical malpractice.[****]  She asserted that the defendants

had a duty to continue medical treatment and to prohibit Keebler from leaving the

hospital.  See id. at 844.  The court observed that Keebler had not been admitted to

the hospital as a result of a suicide attempt, had no history of suicidal tendencies,

and had not displayed any at the hospital.  Id. at 845.  Because Keebler's suicide

was not foreseeable, there was no legal duty to provide continued medical care in

order to prevent it, and the trial court correctly entered a directed verdict in favor

of the defendants.  Id.

In a later decision, the Alabama Supreme Court clarified the function of

foreseeability in analyzing the duty element of a medical malpractice claim.  See

Patton v. Thompson, 958 So. 2d 303, 310–11 (Ala. 2006).[*****]  The court explained

---

[****]Dental malpractice claims are subject to the same analysis as other medical malpractice claims because, as the Alabama Supreme Court has recognized, the Alabama Medical Liability Act of 1987, Ala. Code §§ 6-5-540 through -552, "specifically includes dentists within the definition of 'health care providers' covered under the AMLA."  Schuffert v. Morgan, 777 So. 2d 87, 88 n.1 (Ala. 2000).

[*****]A recent Alabama Supreme Court decision discusses Patton and the issue of foreseeability in the medical malpractice context.  See Breland ex rel. Breland v. Rich,  — So. 3d —, 2011 WL 835065, at *19–20 (Ala. March 11, 2011).  Even though the Breland opinion recognizes that suicide cases are different from other medical malpractice cases, the decision does not overrule Alabama precedent requiring foreseeability as part of the duty and proximate cause elements of a non-suicide medical malpractice claim.  See id. at *20.  The Alabama Supreme Court explained:

The present case did not involve a suicide. The duty of health-care providers, when a patient may attempt to harm himself, contemplates the reasonably foreseeable occurrence of self harm, and such self-destructive conduct involves

8

that in the Keebler case:  "[T]he duty the emergency-room physician owed to the deceased did not include a standard of care to protect against or to prevent suicide, because there was an absence of factors that would have made the patient's suicide foreseeable, thereby triggering such a duty."  Id. at 309.  For the element of proximate cause in a medical malpractice claim, "the plaintiff must demonstrate that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury."  Id. at 311 (quotation marks omitted).  The court also recognized that, while duty is generally a question of law, see id. at 310–11, "proximate cause is almost always a question of fact."  Id. at 312 (quotation marks and alterations omitted).

Although the existence of proximate cause is "almost always" a question of fact, almost always is not always.  The Alabama Supreme Court has affirmed summary judgment for a defendant on a plaintiff's negligence claims when the

_____

the necessity of precautions or safeguards to attempt to prevent such harm. Here, [the plaintiff] was not required to prove that Dr. Rich knew or should have known that it was foreseeable that the "safeguard" of having both an eye form and an eye-exam book in the [neonatal intensive care unit] would fail.

Id.  The patient in that case was at risk of developing retinopathy of prematurity (ROP), and her treating pediatric ophthalmologist, Dr. Rich, put her on the list of patients at risk for ROP.  Id. at *1.  It was foreseeable that Dr. Rich's failure to record information correctly in the eye exam book might lead to a failure to provide, or at least a delay in providing, necessary follow-up examinations to detect ROP, which then might lead to the patient's injury (blindness).  In the present case, by contrast, there was no evidence that Dr. Adams' failure to properly administer a prophylactic antibiotic might foreseeably lead to Hammonds' heart infection because Hammonds had no history of heart trouble.

9

plaintiffs' injuries were not foreseeable and for that reason no proximate cause existed. See Thompson v. Gaier, 512 So. 2d 775 (Ala. 1987); accord Thompson v. Patton, 6 So. 3d 1129, 1135 (Ala. 2008) (affirming judgment as a matter of law granted in favor of the defendant and explaining that "[u]nder Alabama law, evidence showing only a probability of a possibility is not sufficient to establish proximate causation in a negligence action alleging medical malpractice").

In Thompson a pizza delivery driver accidentally drove his car onto the Thompsons' property, knocking down their mailbox and nearly hitting one of the Thompson children. 512 So. 2d at 775. The child's father, who was recovering from back surgery, turned quickly to see "the commotion," and re-injured his back. Id. at 776. The Thompsons sued the pizza delivery driver and his employer for "negligently operating a motor vehicle and negligently maintaining and enforcing a policy of pizza delivery." Id. at 775.

The two Thompson children who were present when the accident occurred could not claim injuries because "in reply to an interrogatory concerning their claimed injuries, [they] responded "N/A" or not applicable." Id. As for their father, the court held that his injuries "could not be viewed as for[e]seeable and as a proximate result of [the defendant's] driving the car onto the property." Id. at 776. The mother's injuries were not foreseeable either, because she was not

present when the accident occurred.  Id.  As a result, the court affirmed summary judgment in favor of the defendants.  Id.  ("[A]s the plaintiffs have adduced no evidence to show that the defendants proximately caused their injuries, the trial court correctly granted the summary judgment and that judgment is due to be affirmed.").

In the present case the only harm that reasonably could have been foreseen from Hammonds' failure to take the prophylactic antibiotic as directed was an infection in his artificial hip joints.  There is no evidence that he showed any signs of risk of any other type of infection.  Even if a properly administered prophylactic antibiotic might have prevented the infective endocarditis, that injury was one that could not have been foreseen.  Regardless of whether unforeseeability is viewed as a failure to establish a genuine issue of material fact on the duty element or on the proximate cause element, the result is the same.  The district court correctly granted summary judgment in favor of the United States.

**AFFIRMED.**

11